The Elmar Hotel Management v. Unite Here Local 1. Mr. Frey, whenever you're ready. May it please the court, my name is Kevin Frey, and I'm the attorney for the appellants in this matter, Allegiant Equities, LLC, Elmar Hotel Management, LLC, Remo Posselli, and Social Club Management, LLC. Just by way of background, Allegiant is a limited liability corporation or company doing business in Illinois and owns the real property that's at issue here, 162 East Ohio Street, otherwise known as the Inn of Chicago. Elmar is also a Michigan limited liability company doing business here in Illinois and was retained by Allegiant to operate the property as a hotel. Remo Posselli is Allegiant's managing member, and Social Club Management, we use SCM as a property management company that engaged independent contractors who performed work at the hotel while it was a migrant shelter. And that's the issue here, it's a migrant shelter, not a hotel. As laid out in our brief, the issues are whether the district court... Did it start out as a migrant housing center and convert to a hotel? No, what happened, Your Honor, is that when the property was purchased, it was a hotel. However, when COVID hit, the hotel industry everywhere, it went under or had difficulty. So it was never actually operated as a hotel, and then after COVID, it was never reopened as a hotel, and that's when the city... No, I'm talking about once it converts to work with the city, to open its doors again. I'm not talking about when it first closes, I'm sorry. So when Allegiant entered into the agreement with the city, it was operated as a migrant shelter. Now, the arbitrator spent a lot of time, or there was a reliance by the arbitrator on the lease agreement between the city and their contractor, Reloshare, and the end of Chicago. Now, that's Poselli, I'm sorry.  He's the one who signs the group sales agreement, correct? He did, yes. And there is no legal entity in of Chicago? That's correct. So he's signing it on behalf of himself? No, during the arbitration, he indicated it was a mistake, but he's signing it on behalf... After the first, second, or third amendment? Well, all of them, Your Honor. Okay, all right. No, he acknowledged during the arbitration that it was a mistake as to all three. And so Allegiant was the one that operated, or owned the property. Elmore was hired to operate the property. When the agreement was made between the city, or with the city, the city hired its own, or had its own company come in to operate. They then had people come in to do the cleaning and all those things. And then after the third amendment, when the property was being operated at full capacity as a migrant shelter, that's when SCM came in and was doing some of the work that the other entity previously that the city of Chicago, or Reloshare, had been using. And so in terms of the arbitrator's decision regarding whether it was a hotel or not, it's our contention that the arbitrator got it wrong, obviously, in that... But I know that's your contention, but that's not the question for us. The question for us is whether the arbitrator's decision drew its essence from the CBA. And it seems to me that no matter how long he may have been here, that's what he was doing. I mean, I don't know how you... It's just what he's doing. Well, see, but he... Instead of relying on the terms, the intent of the parties... Doesn't matter. Doesn't matter. I mean, that's... You see, the problem is how do you get away from... When we have cases where we find the arbitrator's not interpreting the essence of the bargain, the arbitrator's going out, deciding a case on a public policy matter, or deciding on a case based on the last case that was before him, or something like crazy. No matter how wrong he is, it doesn't make any difference. No, I understand how wrong he was. But what he didn't do is rely on the CBA. He didn't rely on the intent of the parties. But aren't you just telling us to reinterpret what the... Basically look at the same contract and come to a different conclusion? Well, we're arguing that he didn't do this. The arbitrator didn't do that when he reviewed the matter. He didn't look at what the party's intent was. Aren't you just asking us to take this same agreement and come to a different conclusion? Well, no, because what I'm saying is that the arbitrator got it wrong, all right? And so... He gets to do that in arbitration, right? No, I understand that. But he didn't draw his... That I understand. That law is crystal clear. I'm not disputing that, Your Honor. But when an arbitrator doesn't draw, as Your Honor said, from the essence of the CBA... Okay. And that's what we're arguing here, is it didn't draw from the essence of the CBA. In terms of the group sales agreement, going back to that for a second, it talks about it being a... What was it? The exact language was, on page 4, the agreement has a provision entitled transitional shelter. The parties, when they made this agreement, the CBA, they had no intent of making this a migrant shelter. The property was never operated as a hotel. It was operated as a migrant shelter. No one's calling and making reservations. No one's going online and making reservations. This was a migrant shelter. So for those reasons and the reasons stated in the brief, we don't believe that the arbitrator drew from the essence of the agreement. Further, one other area I wanted to highlight was the fact that Coselli and SCM specifically did not accede to the authority of the arbitrator, which is within... But they participated in the arbitration. Well, but he didn't participate in terms of his personal capacity. He was there because... Did he object? No. No, he didn't object. But the issue was never set forth that he would be held liable in his personal capacity. If you sign it on behalf of an entity that doesn't exist, who are you signing it on behalf of? He was signing it in his role as the member of Allegiant. And so he... But he didn't put Allegiant. He put down the end of Chicago. No, I understand. He indicated that was a mistake for him to do that. A mistake, I use an eraser. But in a legal document, I don't make the same mistake three different times. I understand, Your Honor. This wasn't a mistake. This was... How can we argue that that was a mistake? He didn't know the end of Chicago didn't exist? He had been in business how many years? He did, Your Honor. How many years had he been in business? A while. I don't know. And how many times has he used the hotel name and not the name of his entity, Allegiant? I don't believe that. I don't recall that coming out during the hearing, so I don't know. But... Was this a common mistake that he would sign legal documents using the wrong legal entity? I don't believe that was addressed during the hearing.  He just indicated it was a mistake during the hearing. All right. And so I understand the points that are being made. However, Allegiant was the one that owned the property. Okay. So that's where we get back to on this, is that he was... That Allegiant owned the property that the NLRB charge indicated was against Allegiant and Elmore. And if it's a contention of the union that Postelli should have been named as individual capacity, they could have gone back and amended the NLRB charge. And so for those reasons, we don't believe that the arbitrator... Not the arbitrator. That Postelli and SCM specifically did not accede to the authority of the arbitration. If there's any other questions, I would... If there are no other questions, I reserve the rest for rebuttal.  Okay. Thank you. Okay. Mr. Kennedy, what do you have to add here? Okay. May it please the court. Wesley Kennedy, representing the Defendant Appellee, Unite Here Local 1. What you have before you, Your Honors, is a thorough arbitration award detailing in great detail the arbitrator's weighing of the evidence, his factual conclusions, and his interpretation of the collective bargaining agreement. And an equally thorough district court decision setting forth the reasons why, under the deferential standards under the labor laws, that arbitration award shouldn't be disturbed by the courts. The challenges to the award rest on disagreements with the facts. Virtually everything you talked about with counsel for the employer in the last few minutes has been a question of fact which was examined by the arbitrator based on an extensive evidentiary record, and he reached evidentiary conclusions. And then he interpreted the terms of the contract based on that, in terms of the definition of the employer and whether the operation was a hotel, based on the facts and his interpretation of the collective bargaining agreement. Under the well-established standards under LMRA Section 301, the arbitrator has plenary unreviewable authority to weigh the evidence and find the facts, even if you think he's improvident or silly. That's the Supreme Court's words. The award must be confirmed as long as it draws its essence from the agreement, which means that even if he is, so long as he is even arguably interpreting the collective bargaining agreement, the award can't be disturbed. The arbitrator has broad discretion with respect to the remedy and his exercise of that discretion is not subject to second-guessing by the courts. And the public policy exception to this deference, which wasn't mentioned in the argument but which the employer is asserting, is a very narrow exception based on very explicit, well-defined public policies, not just based on general policy considerations. In addition to Section 301, you have the NLRB charge, which expressly raised the alter ego single employer issue. It is true that the charge did not name Poselli or Social Club Management, but under the NLRB case law, which we cite in our briefs, the NLRB will amend the charge based on the evidence developed at the hearing, and that's what happened here, where the arbitrator is essentially sitting as the fact finder on the NLRB charge, and the evidence developed with respect to Just to be clear, Ms. Karcho, who's not named as a party in this case and is the managing member of both Elmar and Social Club Management, is Mr. Poselli's wife. We reviewed the record, counsel. And in answer to the question that was asked before, Mr. Poselli testified that he'd been in the industry 30-some years. In addition, we do have the conduct of the parties at the hearing. Mr. Poselli was at the hearing. Ms. Karcho was at the first day of the hearing. So each of the entities now named in the lawsuit were present at the hearing. At the outset of the hearing, both the Employers' Council and the Unions' Council stated that you're going to have to figure out who the employer is because of the relationship among all these entities. And most of the evidence, most of the time at the hearing, if you read the transcript and look at the exhibits, was spent on who's the employer and the interrelationships among these individuals and entities. Let me jump down. I'll go first to the question of whether it was a hotel or not. The employer put that question to the employer. Why are we able to answer that question? Why are we able to answer that question if the arbitrator is already outside? You don't need to answer that question. All right. The next question is then, outside of his authority, whether or not interpreting the term employer, would we be permitted to interpret that? Well, the arbitrator has interpreted the term employer based on the definition of employer in the contract, which includes any person, firm, partnership, corporation. We understand what the arbitrator found. My question is, are we permitted to interpret it again? No. I don't believe so. My next question is whether or not the arbitration award should be set aside for lack of due process. That's the only thing we're left with. The due process argument really goes to what we just discussed, which was each of these parties, Polselli, Carcho, were present at the hearing. So Allegiant was at the hearing. Social Club Management was at the hearing. The Employers' Council said, part of the issue is you're going to have to figure out who the employer is. I said, as the Unions Council, you're going to have to figure out who the employer is. Polselli and Carcho were sitting there on the Zoom when that interchange took place. They were all represented by the same council. They said, he's our lawyer. He said, I'm all of their lawyers. They sat through the evidence on this question. They sat through the submission of briefs, which addressed who's the employer, and there was never an objection to the arbitrator's authority to find who the employer is. The due process question for us is answering whether or not there was notice in process. What you've just articulated is both notice and process. Is there anything left for this court to do in regards to the arbitration award? I don't believe so. The arbitrator made findings of fact which are plenary and unreviewable. The arbitrator interpreted the term employer. The arbitrator interpreted the term hotel based on the evidence. If I can address the ReloShare contract, it's not a lease. It's a hotel group sales agreement. We don't get to interpret that. Okay. I'm merely articulating the evidence on which the arbitrator based his conclusion. That conclusion is unreviewable because that conclusion was within his authority. The public policy exception is based on supposed public policy against piercing the corporate veil. You have to prove the facts to support piercing the corporate veil, but there's no policy against doing that, and there are multiple cases cited in the brief in which courts and arbitrators have pierced the corporate veil based on the facts. If anything, there's a public policy in favor of piercing the corporate veil if the facts so warrant. This really comes back to the simple question of did the arbitrator exercise his authority to find the facts? He did. Did he exercise his authority to interpret the collective bargaining agreement as to the term employer and as to the term hotel? He did. He found violations of the contract in the NLRA based on the evidence. The employer doesn't really dispute the substance of those violations. The real issue is is it a hotel and who's the employer? And his remedy was within his discretion, and the only objections to the remedy have been rehashes of the arguments about the award, and the public policy exception doesn't apply for the reasons I just stated. Okay. Thank you, Mr. Kennedy.  Thank you very much. Mr. Fry. I don't really have much to add other than what's been articulated, and it's in the brief, so if there are questions, I'm happy to answer them. Okay. Thank you. Okay. Thank you. Thank you. Thank you to both counsel. We'll take the case under advisement.